UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHAD E. E., Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant. | CASE NO. 3:26-CV-5137-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION DENYING BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of his application for disability insurance benefits ("DIB").[1] The Court concludes that the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's subjective symptom testimony. Had the ALJ properly considered Plaintiff's testimony, the residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), to the

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned United States Magistrate Judge. *See* Dkt. 3.

Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I. Procedural History

Plaintiff filed his application for DIB on June 28, 2023, alleging disability as of September 25, 2022. Administrative Record ("AR") 81. His claim was denied initially on February 1, 2024, and upon reconsideration on August 8, 2024. AR 81, 93. A hearing was held before ALJ Mark Triplett ("the ALJ") on May 7, 2025, who issued a decision denying Plaintiff's claim on May 22, 2025. AR 17–33. The Appeals Council denied Plaintiff's request for review on December 19, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1. From this decision, Plaintiff filed a complaint with this Court on February 16, 2026, seeking judicial review of the ALJ's decision denying benefits. Dkt. 1.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

**III. Discussion**

Plaintiff argues that the ALJ's: (1) RFC determination is unsupported by substantial evidence as he failed to explain the discrepancy between the opinion evidence he found persuasive and the RFC in accordance with the regulations; and (2) RFC determination is the product of legal error because the ALJ failed to properly evaluate Plaintiff's subjective complaints pursuant to SSR 16-3p and 20 C.F.R. § 416.929, leaving the Court unable to proceed to a substantial evidence review. Dkt. 11 at 1.

A. Medical Opinion Evidence

First, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence because he "failed to explain the discrepancy between the [medical] opinion evidence he found persuasive and the RFC in accordance with the regulations." *Id.* at 3. Specifically, he argues the ALJ found the opinions of the state agency medical consultants were persuasive but did not "provide any explanation as to why he did not include the limitation to *short* and simple instructions opined at both the initial and reconsideration levels." *Id.* (emphasis added).

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The

[2] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* at § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

i. *Dr. Jonathon A.*

State agency medical consultant Dr. Jonathon A. ("the SAMC") conducted an evaluation of Plaintiff at the initial stage on January 31, 2024. AR 79. In the SAMC's opinion, Plaintiff has "moderate" limitations in his ability to: understand, remember, or apply information; and in concentrating, persisting, or maintaining pace. AR 73. The SAMC also opined that Plaintiff "retains the capacity to understand and remember *simple* instructions . . . [but] would not be able to consistently understand and remember instructions that are more detailed than this." AR 78 (emphasis added). The ALJ found the SAMC's opinion was "generally persuasive." AR 30.

Plaintiff argues that ALJ erred because "the RFC clearly does not reflect the *short and simple* instructions opined," but the "ALJ did not provide any rationale to support the decision to not include the opined limitations from the [SAMC] [and] it is clear on its face that the RFC only limits Plaintiff to simple work. Dkt. 11 at 5 (emphasis added). Indeed, this is because the SAMC only opined "simple" instructions. AR 78. In turn, the ALJ accounted for "simple instructions" in Plaintiff's RFC, consistent with the SAMC's opinion that Plaintiff "retains the capacity to understand and remember *simple* instructions, maintain CP&P for up to 2-hours continuously, maintain adequate attendance, and complete a normal workday/workweek within normal tolerances of a competitive workplace." *Id.* (emphasis added).

As Defendant argues, the SAMC "never wrote that Plaintiff was limited to 'short and' simple instructions[,]" Dkt. 16 at 5, and for this reason, the Court concludes that the ALJ did not err in incorporating the persuasive medical opinion into Plaintiff's RFC.[3]

B. <u>Subjective Symptom Testimony</u>

Next, Plaintiff argues that the ALJ did not offer a specific, clear, and convincing reason for discounting Plaintiff's testimony. *Id.* at 7–10.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted). The first step requires an ALJ to determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). This

[3] Plaintiff also argues that the ALJ erred in failing to include limitations opined by Dr. Kaper, in that he "did not provide any rationale to support the decision not to include the opined limitations from [Dr. Kaper] [because] it is clear on its face that the RFC only limits Plaintiff to simple work." Dkt. 11 at 5. Once again, as Defendant argues, "neither [the SAMC] nor Dr. Kaper found that Plaintiff was limited to 'short,' simple instruction." *Id.*; AR 91. For this reason, the Court concludes that the ALJ did not err in evaluating Dr. Kaper's opinion.

objective medical evidence does not have to corroborate the severity of the alleged symptoms, rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

If a claimant has satisfied the first step, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.* at 1112 (citation omitted). As with all findings by the ALJ, however, the specific, clear, and convincing reasons for rejecting the claimant's testimony about the severity of their symptoms must also be supported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1.

Plaintiff testified that in September 2022, he "started having a lot of shortness of breath with any exertion, fatigue, anxiety through the roof, and went to urgent care and they just diagnosed [Plaintiff] with . . . sinusitis, bronchitis, [which] didn't seem right because [Plaintiff] wasn't having like cold symptoms." AR 51. After visiting his primary care physician, Plaintiff "tested positive for Epstein Barr virus and Cytomegalovirus . . . [which] was the start of this cascade of events, you know, exacerbating the [restless leg syndrome] and then those symptoms of the exertion and fatigue continued." AR 51–52. In turn, Plaintiff experienced "syncopal episodes where [he] would just pass out[,]" and "these episodes have been happening anytime with activity, any kind of exertion and I can almost like clockwork, I know that 30 minutes is kind of my window of activity before I start feeling that sensation . . . dizziness, lightheadedness, shortness of breath[.]" AR 52.

Plaintiff also testified about his restless leg syndrome, that he "used to be able to get up and lean up against the wall and try and doze that way and the pain would be enough where . . . it

would be tolerable" but "it just progressively got worse to where this was happening around the clock. It's like it starts from your core and you're just being electrocuted down your arms, legs, torso, and it's excruciating." AR 54. Plainitff experienced this pain "around the clock[.]" AR 55. He testified that "standing is probably the, the worst [because] . . . the lumbar pain it just shoots the sciatic nerve pain down my right leg and sometimes walking will relieve it." AR 59. Finally, Plaintiff testified that he tries "to coordinate all [his] activities in a 30 minute [window], including in the morning, getting up, taking a shower, getting dressed" because if he "exceed[]s that 30 minutes, that whole motor issue kicks in and then my whole body just shuts down where I have to just sit, my, I can't open my eyes." AR 59–60.

The ALJ found that Plaintiff's severe impairments could reasonably be expected to produce the alleged symptoms and did not make an affirmative malingering finding. AR 23. The ALJ, therefore, was required to offer specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Smith*, 14 F.4th at 1112.

Here, the ALJ sought to do so based upon inconsistencies with the medical record and Plaintiff's activities of daily living. AR 23–27. These are proper bases for an ALJ to discount a claimant's symptom testimony. *See Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse" subjective symptom determination).

i. *Inconsistencies with the Record*

First, the ALJ found that Plaintiff's testimony was inconsistent with the longitudinal record, that "the objective evidence found in the medical record during the relevant period

support[s] a greater level of function than one alleged by [Plaintiff].” AR 27. Specifically, the ALJ found Plaintiff’s testimony inconsistent with:

> recent physical examinations [that] revealed . . . [Plaintiff] appeared well-developed, well-nourished, well-groomed, and in no apparent distress; neck was supple with normal range of motion; cardiovascular system and pulmonary system were normal; abdomen was normal; gait was within normal limits; motor strength was 5/5; muscle bulk was normal; lower extremities exhibited no edema; [Plaintiff] exhibited no focal deficits; cranial nerves were intact; and motor exhibited no weakness, tremor, abnormal muscle tone, or pronator drift.

*Id.*

Notably, in making this finding, however, the ALJ also found that Plaintiff was admitted to the hospital from January 18 to January 22, 2023, due to “exertional dyspnea and tachycardia, which came on with upright posture[,]” AR 23, 769, and in September 2023, presented to an orthopedist with complaints of “whole body p[ain].” AR 23, 1151. At that September 2023 appointment, the ALJ found that Plaintiff “appeared well-groomed and in no apparent distress; gait was within normal limits; [Plaintiff] was able to tandem walk; motor strength was 5/5 in all groups tested in upper and lower extremities bilaterally; muscle bulk was normal; and range of motion was within normal limits” despite, Plaintiff experiencing “an exacerbation of pain with flexion, extension, and pressure with lateral rotation or bending” and receiving a referral “to Providence neurology to consult on [Plaintiff’s] *ongoing symptoms*.” AR 24, 1152–53. (emphasis added).

In addressing these ongoing symptoms, in March 2024, as the ALJ found, Plaintiff “underwent C5-C6 arthroplasty[,] and anterior cervical decompression[,]” but in May 2024, “continued to report lower extremity pain and wanted to try injections[.]” AR 24, 1349, 1444. As the ALJ found, Plaintiff “received lumbar transforaminal epidural steroid injection at the bilateral L5-S1 level” the following month. AR 24, 1437, 1444.

Plaintiff argues that, simply "providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (emphasis and ellipsis in original) (citation omitted). The Court agrees with Plaintiff, generally; in the present matter, however, the summary of the medical evidence that the ALJ *does* provide, does not support a finding of an inconsistency with Plaintiff's allegations—if anything, the ALJ's cited summary of the medical evidence *is consistent* with Plaintiff's testimony about the limiting effects of his symptoms.

It is paramount that an ALJ has a duty to "set forth" their reasoning "in a way that allows for meaningful review[,]" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), which requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022) (quoting *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)). Here, the ALJ has failed to do so, and his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998). For this reason, the Court concludes that the ALJ erred in finding that Plaintiff's testimony was inconsistent with the longitudinal record, because that finding, itself, is not supported by substantial evidence.

ii. *Activities of Daily Living*

Alternatively, the ALJ found Plaintiff's "statements regarding his activities of daily living suggests a greater level of function" with Plaintiff engaging in activities that "are fairly robust." AR 27. To support this finding, the ALJ notes that Plaintiff "reported that he is able to care for his personal hygiene independently, prepare meals[,] and perform household chores . . . is able to

utilize a computer . . . enjoys playing video games . . . is able to manage his personal finances independently, to include paying bills, counting change, using a checkbook, and handling a savings account." AR 27–28. The ALJ also found Plaintiff "is able to operate a motor vehicle . . . [and] interact with others via in person or text[.]" AR 28.[4]

Plaintiff argues that "the ALJ wholly failed to account for how Plaintiff accomplishing his activities of daily living equates to the ability to sustain work on a 'regular and continuing basis' for eight hours a day, five days per week[,]" and that the ALJ's "failure to account for the limited manner in which Plaintiff performed his activities, and the frequency in which he did so cannot truly be found to be an appropriate reason[ ] for the dismissal of Plaintiff's subjective complaints." Dkt. 11 at 10. The Court agrees.

Here, Plaintiff, as to his personal care, testified he tries "to coordinate all [his] activities in a 30 minute [window], including in the morning, getting up, taking a shower, getting dressed" because if he "exceed[]s that 30 minutes, that whole motor issue kicks in and then my whole body just shuts down where I have to just sit, my, I can't open my eyes." AR 59–60. This testimony is consistent with Plaintiff's activities. Moreover, as the Ninth Circuit has long observed, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). So too, here.

For this reason, the Court concludes that the ALJ's finding that Plaintiff's testimony was inconsistent with his activities of daily living was not supported by substantial evidence, and

[4] The Court observes that, at his hearing, Plaintiff testified he had not driven in a "little over a year[,]" and that he had not had his "driver's license taken away[,] [he] just kind of did that [him]self because [he] felt unsafe and felt it'd be irresponsible to continue to drive" due to "these conditions and the medications." AR 48–49.

therefore, the ALJ has failed to offer a specific, clear, and convincing reason, based upon substantial evidence, for discounting Plaintiff's subjective symptom testimony.

iii. *Harmless Error Analysis*

Applying the harmless error analysis, the Court concludes that if the ALJ had properly considered Plaintiff's subjective symptom testimony, the RFC may have included additional limitations, or the ultimate determination of disability may have changed. Accordingly, the ALJ's error is not harmless and necessitates reversal. *See Stout*, 454 F.3d at 1055; *see also Molina*, 674 F.3d at 1115.

## IV. Conclusion

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED**.

Dated this 7th day of October, 2026.

David W. Christel
United States Magistrate Judge